## McIntyre *versus* Ramsey.

23   317
135   443
23   317
201   551
23     317
34 SC 166

1. After giving a life estate, the testator allowed the plantation, after the end of the life estate, to come to the next male heir nearest in kindred and relation to himself, "according to law, and so on in succession on that line." *Held*, that the person who became seised of the remainder at the testator's death was seised *in fee simple*.

2. By the words *according to law* was meant that the estate should descend in the same manner the law would have given it to the heir of the testator ; and the words "and so on in succession on that line" do not necessarily mean that the estate shall go to heirs of the body of the devisee, but simply to *his* heirs as contradistinguished from the heirs of the tenant of the life estate previously given.

ERROR to the Common Pleas of *Lancaster county.*

This was an amicable action in ejectment for a tract of 200 acres more or less, in which *Milton* McIntyre, a minor, was plaintiff, and William B. Ramsey was defendant. A case was stated for the opinion of the Court.

William McIntyre, who was seised of the land in question, by his will dated 17th June, 1803, devised to his grandson William M. McCoy, the profits of the land to school and clothe him till he arrived at the age of 20 years : then, when he came to the age of

20 years, the testator gave the said land to his said grandson during his natural life ; and he further declared that, " *at the end of his life*, I give and allow the plantation to come to the nixt mail heair neerest in kindred and relation to mee, according to law, and so on in sucksession on that line."

W. M. McCoy, the tenant for life, died in May, 1850, above the age of 21 years, leaving a daughter, but no male issue.

The testator had issue five children ; two sons, viz., Samuel, who died after the testator and before W. M. McCoy; and Hugh, and three daughters.

Samuel, the first son, had issue—1. William, who died about three months after his father, leaving his eldest son Samuel McIntyre, who died in 1851, leaving his eldest son *Milton McIntyre*, the plaintiff; 2. John, deceased; 3. Samuel, deceased; 4. Hugh, living ; 5. Alexander, still living; and some daughters.

II. Hugh McIntyre, the second son of testator, died before the testator, leaving issue one son, Elijah McIntyre, who died in 1852, leaving issue; and also three daughters.

The three daughters *of the testator* were all dead, leaving issue.

The question submitted to the Court was, "what interest the parties had in the said tract of land, under the above-recited clause of testator's will ? The plaintiff claims *the whole*, as heir in tail male of Samuel McIntyre, the oldest son of the testator. If, the plaintiff were entitled to the whole, then judgment to be entered in his favor accordingly ; otherwise judgment for the defendant."

LONG, J., expressed the opinion that a tenancy in special tail male was created, and he directed judgment to be entered for the plaintiff.

Error was assigned to the judgment.

*Stevens*, for plaintiff in error.—The estate given to testator's "next male heir," nearest in kindred and relation to the testator and so on in succession in that line, vested in the person who answered the description at the time of the testator's death: 2 *Jarman* 52–3; *Powell on Dev.* (21 *Law Lib.*) 166–7 ; 282–3–4. As to the meaning of the terms "next of kin" or "nearest of kindred," reference was made to 2 *Jarman* 30–39. In this case *Samuel* answered all the requisites of the description ; the property, therefore, vested in him. What estate had he? The words "next male heir" and "nearest of kin to me," were intended evidently to indicate the first taker, and not to qualify the estate. If a female, equally. near of kin with Samuel, had succeeded him, she was to be excluded. The subsequent words show that it was to go to the heirs of the male line—not to the male heirs of that line, as contended for by the defendant in error. The usual words of inheritance are not here ; nevertheless, apt words to convey a fee simple are used. If.

[McIntyre v. Ramsey.]

the testator had said, I give it to the "male heir nearest of kin" at the time of my death, and to the heirs of that line, it would have meant the same as the present will, and would have given a fee simple to the first taker.   The meaning of the words succession or successors must control this estate.   The testator in effect says: "I give and allow the plantation to whomsoever may be my next male heir at the time of my death, and to his successors." Successors is the same as heirs, and creates a fee simple: 8 *Viner* 206; *Id.* 209.   The whole scope and words of the will show that the estate was to vest in the person answering the description of next male heir, and then to descend to his heirs.   It is therefore a fee simple, and judgment should be entered for the defendant below.

*Franklin,* for defendant in error.—It was admitted that the estate vested in the person answering the description at the time of the testator's death, viz., his eldest and only surviving son, Samuel: Doe *v.* Spratt, 5 *B. & Ald.* 731; 27 *E. C. L.* 163; 3 *East* 288.   *Heir male* is in such case a *designatio personæ,* pointing to the special heir under the statute *de donis,* and not to the heir or heirs general: 1 *Coke* 66, Arthur's Case; 2 *Vernon* 729; 5 *Burr.* 2617.

It was further contended that the estate in remainder which vested in Samuel, was an estate *in tail male,* which became vested in Milton McIntyre, the plaintiff below, as heir in tail male of Samuel McIntyre.   The *intention* of the testator is the cardinal point of inquiry: 4 *Cruise* 157; 2 *Bin.* 149; 7 *Barr* 16.   *All* of the words of the devise are to be considered: 2 *Williams on Exec.* 931; 3 *Yeates* 187; 1 *East* 263.   Successors means heirs: *Swinburne* 145–159.   If successors means heirs, the words "*on that line*" are to be disregarded in order to make the estate devised a fee simple.   They can apply only to a fee tail: 8 *W. & Ser.* 38; 3 *Bin.* 374; 7 *Taunton* 85; 1 *Ves. Sen.* 521.

Words of procreation are not necessary to limit an estate in tail. Any words indicating the testator's intention to that effect are sufficient: *Swinburne* 166; 4 *Cruise* 268; 8 *Viner* 212; 1 *Burr.* 38.   It is difficult to give a more correct description of an estate tail than by speaking of it as vesting in the male heir, and passing on in succession on that line.   The expression "on that line" is a phrase of restraining import; used to impose a precise limit to the previous general expression of male heir.   It was in conclusion intimated that an intention was manifested in the devise to limit the estate to the issue of the first taker.

The opinion of the Court was delivered by

LEWIS, J.—After giving a life estate to McCoy, the testator allows "the plantation to come to the *nixt mail heair neerest* in kindred and relation to *mee,* according to law, and so on in *suck-*

*cession* on that line." The person who filled the description here given, at the time of the testator's death, became seised of the estate in remainder. Was he seised in *fee simple* or *fee tail male?*

The rule in England is that the heir at law is not to be disinherited except by express direction or necessary implication. That rule should be observed with more strictness here than in England, because our laws of inheritance are more equal : 2 *Bin.* 20. "Entailments are recommended in monarchical governments as a protection to the power and influence of the landed aristocracy; but such a policy has no application to republican establishments, where wealth does not form a permanent distinction, and under which every individual of every family has his equal rights and is equally invited by the genius of the institutions to depend upon his own merit and exertions :" 4 *Kent* 20. As the rules of descent established by law are presumed to be founded on wisdom, and as the policy of the law stands opposed to entailments, the remainderman must be deemed seised in fee simple, unless we are forced by the clear language of the will to give it some other construction. Words of procreation are as necessary to the creation of an estate tail as words of inheritance are to a fee simple : 2 *Bl. Com.* 114. But we have no words of procreation here. Even the words which designate the first taker after the life estate, do not necessarily import that he must be one of the heirs of the testator's body. He may be his "next male heir nearest in kindred" without being lineally descended from him. The words "so on in succession on that line" do not therefore necessarily mean that the estate shall go to the heirs of the body of the devisee. The words "according to law" are not to be rejected in the construction of this will. It is true that the testator may have meant that the law is to be regarded in ascertaining who is his next male heir nearest in kindred and relation to him; but he may also have meant that the estate shall come to him, in the same manner that the law would have given it to the heirs of the testator. We adopt this as the true meaning. The words "on that line" do not necessarily mean the male issue of the devisee, but simply his heirs as contradistinguished from the heirs of the tenant of the life estate previously given. If we created an estate tail by construction in this case, we must do it not only without words of procreation, but without any words which can supply their place. If the succession is not to be regulated according to law, but must be governed by the description given to designate the first taker after the life estate, the result would be inconvenient, and, as we think, contrary to the testator's intent. Upon the death of every tenant it would be necessary to ascertain, not only his male heir, but the male heir nearest in kindred and relation to the testator. This, in process of time, would become impossible. And yet this is the line we should be compelled to seek for if we departed from the

[McIntyre *v.* Ramsey.]

rules of descent established by law. An estate tail is so readily docked, that we are not willing to suppose the testator had such an unimportant object in view, where his will does not clearly express it. We are of opinion that Samuel McIntyre, the son of the testator, was seised in fee simple of the remainder, and that the plaintiff in error is therefore entitled to judgment on the case stated.

Judgment reversed and judgment for the plaintiff in error.