# Clark *et al. versus* Scott.

1. Ash devised his residuary estate real and personal to several persons, and directed in case of the death of either of them during his life that such one's devise or bequest "shall not thereby lapse but shall go to and be taken by the heirs, executors or administrators of said legatees or devisees so dying in the same manner as if the same had been specifically devised." Two of the devisees died without issue having made wills. *Held*, that their shares passed to their heirs and next of kin and not to the devisees and legatees under their wills.

2. "Heirs" in the substituted gift was used in its technical sense and is a word of purchase.

3. "Heirs" is to be taken in its technical sense, unless there be something in the will to show that it was used in a broader sense.

4. "Heirs" in Pennsylvania, when used as a word of purchase, means statutory heirs, those who take under the intestate acts.

5. One of the predeceased devisees left a widow. The question whether she took any interest in his lapsed devise is of so much doubt that the other devisees could not convey a marketable title without her release.

February 8th 1871. Before THOMPSON, C. J., AGNEW, SHARSWOOD and WILLIAMS, JJ. READ, J., at Nisi Prius.

Certificate from Nisi Prius: No. 434, to January Term 1871.

This was an amicable action of covenant, commenced October 4th 1870, in which Jane Clark, Joseph Ash, Matthew Ash, James Ash, Joshua W. Ash, Robert P. Ash, Margaret G. Ash, George W. Ash, Samuel S. Ash, Matthew F. Ash, Hannah Ann Ash, Earl S. Ash, and Humphrey M. Ash, the said Samuel S., Hannah Ann, Matthew F., Earl S., and Humphrey M., being the children

[Clark v. Scott.]

of Caleb Ash, deceased, were plaintiffs, and Thomas A. Scott defendant.

The action was founded on a contract by which the defendant agreed to buy from the plaintiffs a messuage and tract of land in Darby township, Delaware county, for $25,000, to be paid in five equal instalments, one on the execution and delivery of the deed, with interest from July 1st 1869, and the remaining four at different periods, the last on the 1st day of July 1872, to be secured with interest by bond and mortgage on the premises.

The land contracted to be sold had belonged to Thomas P. Ash, who died seised about July 1866, having made his will, dated August 16th 1862 and proved July 23d 1866, by which he gave, amongst other things, as follows:—

"I give and bequeath unto Anna B. Pearson the sum of $1000," &c. He then made eleven other pecuniary legacies in precisely the same terms.

He made no specific devise of any real estate. The residuary clause of the will was as follows:—

"All the rest, residue and remainder of my estate, real and personal and mixed, whatsoever, I order and direct shall be divided into eleven equal parts or shares, one whereof I give, devise and bequeath unto Jane Clark, her heirs, executors, administrators and assigns for ever. One other of the said shares I give, devise and bequeath unto John Ash, his heirs, executors, administrators and assigns for ever. * * * One other of the said shares I give, devise and bequeath unto Mary Ash, her heirs, executors, administrators and assigns for ever." * * *

He gave one share to each of the other seven of the persons named in the following clause in precisely the same terms, and further said:—

"The said Jane Clark, John, Joseph, Matthew, James, Joshua, Robert P., Mary, Margaret and George, being the children of the late Matthew Ash and Mary Ash. And the other remaining one-eleventh part or share of my said residuary estate I give, devise and bequeath unto the five children of Caleb Ash, deceased (who was another child of Matthew Ash and Mary Ash) to wit, Samuel, Matthew, Hannah Ann, Earl, and Humphrey Ash, to hold to them, their several heirs, executors, administrators and assigns for ever. And in case of the death of any or either of the above-named legatees or devisees under this my will, during my lifetime, I hereby expressly direct that the devise or bequest to him or her so dying shall not thereby lapse, but shall go to and be taken by the heirs, executors or administrators of said legatees or devisees so dying, in the same manner as if the same had been specifically devised."

Mary Ash, one of the residuary devisees of Thomas P. Ash,

died in his lifetime, having made a will, dated December 11th 1861, which contained amongst other things as follows :—

" Item. I give, devise and bequeath to my sisters, Hannah and Margaret G. Ash, the entire annual income and interest of all the estate of every kind which I may have a right to dispose of at the time of my decease, for and during their natural lives, and to the survivor of them. And immediately after the decease of such survivor I give, devise and bequeath all my estate of every kind which I may die seised and possessed of, to my sister, Jane Clark, and to all my brothers, and to the legal representatives of such of them as shall then be deceased, in equal shares, and to their heirs and assigns for ever, in such manner, nevertheless, that the legal representatives of any deceased brother or sister shall collectively take such share only as the parent would have taken had he or she been living. * * *

" Item. I authorize and empower my executors to sell and convey, either at public or private sale, any portion of my real estate, whether held by me severally or in . common with other parties, whenever the convenient settlement of my estate may in their judgment render it expedient, or to make partition on behalf of my estate of any real estate held by me in common with other parties, and to execute all necessary deeds and conveyances for that purpose, and also to represent my estate by becoming party to any legal proceedings having for their object any partition or settlement of any estate so held by me. The proceeds of all sales made under authority herein given shall be invested in' some safe securities, and the incomes arising therefrom applied as hereinbefore directed."

John Ash also died in the lifetime of Thomas P. Ash, having made a will, dated April 20th 1864, which contained, amongst other things, as follows :—

" Second. I give and bequeath to my widow, Elizabeth L. Ash, during the term of her life, the whole of the net income and interest of my entire estate, to be paid to her by my executors hereinafter named, from time to time, as the same shall be collected.

" Third. I give and bequeath to the children of my brothers, namely : Alice and Matthew F., children of my brother Matthew Ash ; Samuel S., Hannah Ann, Earl S., and Humphrey M., children of my brother Caleb Ash, deceased ; Mary Hannah, daughter of my brother Joshua W. Ash ; Marian, Margaretta T., Louise, and James Franklin, children of my brother James Ash ; Mary, Hannah S., and John S., children of my brother Robert P. Ash ; and George, son of my brother George W. Ash, and to the survivors and survivor of them, the whole of my estate of every kind, and the rents, remainders and issues thereof to be equally divided to and among them, share and share alike, sub-

[Clark *v.* Scott.]

ject, nevertheless, to the foregoing and the following items, provided, that the lawful child or children of any of the above named, who may die, leaving such issue, shall receive the share which the parent would be entitled to if living.

"Fourth. It is my will and pleasure that if any of my above named brothers be living at the time of my decease and the decease of my widow, the income of such portion of my estate as shall fall to the share of his child or children, under the provisions of the foregoing item, shall be enjoyed by said parent during life, and at and immediately after his decease, the said principal sum shall be paid over to his children or child, as above directed.

"Fifth. Should any of the said survivors die after my decease, leaving no lawful issue, and before receiving payment of their legacy, the amount of every such legacy shall revert to my estate and be divided equally to and among the remaining survivors. Subject, nevertheless, to the provisions of the foregoing third and fourth items.

"Sixth. I give to my executors full powers and authority, at their discretion, to sell and convey any and every part of my real estate whenever they may deem it best for the convenient settlement of my estate, conformably to the provisions of this instrument."

The precise time of the death of Mary and John Ash did not appear in the paper-books.

Mary died unmarried and without issue, leaving to survive her as next of kin her brothers and sisters and nephews and nieces named in the will of Thomas P. Ash.

John died after her, leaving to survive him a widow, Elizabeth L. Ash, and as next of kin, his brothers and sisters (except Mary) nephews and nieces named in the will of Thomas P. Ash.

The plaintiffs are all the devisees (except Mary and John Ash) named in the residuary clause of the will of Thomas P. Ash: but include no person named in the will either of Mary or John.

The foregoing facts were agreed to in a case stated, which contained also :—

"The defendant refused to accept a deed for the premises, executed in due form by the plaintiffs, and the wives of such as have wives, or to execute the aforesaid bonds and mortgages for that part of the purchase-money which was to remain secured on the premises by the terms of the contract, or to pay the instalments of purchase-money which have become due.

"If the court should be of the opinion that the plaintiffs by their aforesaid deed can convey a good and marketable title in fee simple to the whole of the premises, then to enter judgment for the plaintiffs in this action for the instalments of purchase-money then due under the aforesaid contract, with interest, otherwise to enter judgment for the defendant."

17 P. F. Smith—29

450            SUPREME COURT         [*Philadelphia*

[Clark *v.* Scott.]

"And further if the court should be of opinion that Elizabeth L. Ash, widow of the above-mentioned John Ash, is entitled to any estate or interest in the premises above referred to, under the will of Thomas P. Ash, but shall be otherwise of opinion in favor of the plaintiffs, then plaintiffs shall procure from her a good and sufficient release of any such estate or interest, before judgment shall be finally entered in their favor:"

"The question presented by the case stated for the decision of the court, is whether the following clause of the will of Thomas P. Ash, viz. :—'And in case of the death of any or either of the above-named legatees or devisees, under this my will, during my lifetime, I hereby expressly direct that the devise or bequest to him or her, so dying, shall not thereby lapse, but shall go to and be taken by the heirs, executors or administrators of said legatees or devisees so dying, in the same manner as if the same had been specifically devised,'—passed the tract of land in question to the heirs at law of John Ash and Mary Ash, the predeceasing devisees of testator, or to, or to the use of the devisee of said John Ash and Mary Ash; and the further question, whether, if to the heirs, Elizabeth, widow of John Ash, is one of those heirs."

The court at Nisi Prius entered judgment for the defendant.

The plaintiffs took a writ of error and assigned for error, the entering of judgment for the defendant.

*A. L. Smith*, for plaintiffs in error.—"Heir" has always its full technical signification unless controlled by language showing a decided intention to vary such meaning : Campbell *v.* Jamison, 8 Barr 498. The whole force and direction of this devise and bequest must be derived from his will alone. We cannot look to the predeceasing devisees for anything. Our Statute of Wills gave them no control over a mere possibility like this : 1 Greenl. Cruise Dig. tit. *Devise*, ch. viii., § 23, n. 2; Schiefflein *v.* Kessler, 5 Rawle 115; Baskin's Appeal, 3 Barr 304; Baines *v.* Ottey, 1 Myl. & K. 465; Bridge *v.* Abbot, 3 Bro. C. C. 224; Jennings *v.* Gallimore, 3 Ves. 146; Long *v.* Blackall, Id. 486; Holloway *v.* Holloway, 5 Id. 399; Vaux *v.* Henderson, in note to Houseman *v.* Abbey, 1 Jac. & Walk. 388; Gittings *v.* McDermott, 2 Myl. & K. 69; Jacobs *v.* Jacobs, 16 Beav. 557. Where the word is simply "heirs" or "heir at law," the bequest of personalty may pass to the technical heir in preference even to the next of kin : Gwynne *v.* Muddock, 14 Ves. 488; In re Newton's Trust, 4 Eq. Cas. 171; De Beauvoir *v.* De Beauvoir, 3 House of Lords, Cas. N. S. 524; In re Porter's Trust, 4 K. & John. 188; Daniel *v.* Dudley, 1 Phill. 1; Mackenzie *v.* Mackenzie, 3 MacNaugh. & Gord. 559; Chapman *v.* Chapman, 33 Beav. 556; Long *v.* Watkinson, 17 Beav. 471; Palin *v.* Hills, 1 Myl. & K. 470; Johnson *v.* Johnson, 3 Hare 157; Ware *v.* Fisher, 2 Yeates 578; Miller's

[Clark *v.* Scott.]

Appeal, 11 Cas. 323; Gibbons *v.* Fairlamb, 2 Id. 217; Eby's Appeal, 14 Wright 311; Id. 201; Physick's Estate, 2 Phila. R. 178.

*H. Wharton,* for defendant in error.—The mere expression of the testator's intention that the devises and bequests made by him should not lapse by the death of a legatee or devisee in his lifetime, would have been inoperative: 1 Jarm. on Wills 294; Sibley *v.* Cook, 3 Atk. 572; Elliot *v.* Davenport, 1 P. Wms. 83; Toplis *v.* Baker, 2 Cox Ch. C. 121; 2 Wms. on Ex'rs. 1088; Sloan *v.* Hanse, 2 Rawle 28.  A substitutionary gift made to the executor of a legatee, without more, may be construed,

(1.) Either the executor would take beneficially;

(2.) Or as trustee for the next of kin;

(3.) Or, finally, as trustee for the uses and purposes of the will.

1. The first is untenable, except in special cases: Evans *v.* Charles, 1 Anstruther 128; Price *v.* Strange, 6 Madd. 161; Wellmore *v.* Bowring, 1 Sim. & Stuart 24; Marshall *v.* Collett, 1 Younge & Coll. 239; Long *v.* Watkinson, 17 Beav. 471; 2 Williams on Executors 1029.

2. The second is supported only by Palin *v.* Hills, 1 Myl. & K. 470; Bridge *v.* Abbot, 3 Brown's C. C. 224.  Palin *v.* Hills is now overruled: Collier *v.* Squire, 3 Sim. 328; Daniel *v.* Dudley, 1 Phill. 1; Attorney-General *v.* Malkin, 2 Id. 64; Allen *v.* Thorp, 7 Beav. 72; Morris *v.* Howe, 4 Hare 599; Long *v.* Wilkinson, 17 Beav. 473; Holloway *v.* Clarkson, 2 Hare 521; Hewitson *v.* Todhunter, 22 L. J. Ch. 76; 15 Eng. L. and E. 396; 2 Williams on Executors 1029; Gibbons *v.* Fairlamb, 2 Casey 218.

3. The remaining alternative, that the legacy goes to the executor, not indeed as part of his testator's estate, but to be administered as if it were, is therefore the one to be adopted.

The opinion of the court was delivered, February 6th 1871, by

SHARSWOOD, J.—The testator, Thomas P. Ash, after devising his residuary estate, real and personal, to several persons, declared that in case of the death of either of them before him, the devise or bequest should not lapse, " but shall go to and be taken by the heirs, executors or administrators of said legatees or devisees so dying, in the same manner as if the same had been specifically devised.".  He was evidently aware of the distinction between real and personal estate.  He has used throughout his will, the words legally appropriate to each.  All his legacies of mere personalty are by the words " give and bequeath," but when he comes to the residuary clause in which he blends both his real and personal estate, he is careful to use the words, " give, devise and bequeath," and adds a limitation to " heirs, executors, administrators and assigns."  We may infer then that in the substituted gift for the lapsed devise, the word " heirs" was used in none

other than its legal technical meaning. Apart, however, from this very important assistance at arriving at the true intention of the author of the disposition, it is a canon of construction settled in many cases, that the word "heirs" shall receive its appropriate technical sense, unless there is some language or expression which shows that it was used in the broader and more popular sense: Porter's Appeal, 9 Wright 201; Eby's Appeal, 14 Ibid. 311. In law the heirs of a man are those upon whom his lands of inheritance descend upon his death intestate. Popularly the word often includes devisees—the persons who are made heirs— *hœredes facti.* In the will before us it is plainly a word of purchase. It could not be otherwise, for by the very supposition of the death of the devisee before that of the testator, there was no estate in him in his lifetime to which the word could attach as a word of limitation. In this state when the word "heirs" is used as a word of purchase, it means·"statutory heirs"—those persons designated by the Intestate Act to take the estate not disposed of by last will and testament: Walker *v.* Walker, 4 Casey 40; Dodson *v.* Ball, 10 P. F. Smith 500; Aspden's Estate, 2 Wall. Jr. 368.

It has been strongly urged, however, that as the word "executors" is used the testator intended those who should be named in the last wills and testaments of his devisees. As we have no question in regard to personal estate before us, it is unnecessary to consider how the executors would take, whether as trustees for the next of kin as of an undisposed-of surplus, or for the uses of the will generally. We cannot consider that from his using the word "executors" the testator meant by "heirs" to include devisees. Indeed, the argument would rather seem the contrary. As he employed knowingly the terms "executors or administrators" as to personalty, the inference would rather seem to be, that if he had meant it, he would have said "heirs or devisees." , Undoubtedly the words are to be construed distributively—*reddendo singula singulis*, and so as "executors or administrators" are applicable to the personal estate, "heirs" standing by itself is the only term to be applied to the realty.

There are other reasons why, without express words indicating his intention, the testator in his substituted gift in the case of a lapse, ought not to be considered to have had reference to devisees. It is certain that no wills made by his devisees in their lifetime could have had any operation by their own force upon property not owned by them at the time of their decease. The devisee of the predeceased devisee must therefore take in his character of devisee of the original or first testator. Hence, express words are necessary to designate him as the object of his bounty. But still further, *non constat* that the predeceased devisee would not have specifically devised this property if he had owned it when he made his will, and not have suffered it to pass by his residuary

[Clark v. Scott.]

devise. In giving the property of Thomas P. Ash to the residuary devisees of Mary Ash and John Ash, it is really but a mere guess that if Mary Ash and John Ash had been the owners of the property devised to them by Thomas P. Ash at the time of their death, they would have allowed it to pass by their general residuary devise. In fact the court is by construction making a will for them of this property. It is much better that the law should make the will; in other words, that the estate should go to those designated by the intestate laws as their heirs or next of kin.

In regard to the further question, whether the widow of John Ash is one of his "statutory heirs," entitled to her share under the intestate laws, we consider it to be a question of so much doubt under the provisions of the Act of April 8th 1833, Pamph. L. 316, and the cases of Thomas v. Simpson, 3 Barr 60; Shaw v. Galbraith, 7 Id. 111; Seider v. Seider, 5 Whart. 208; Schall's Appeal, 4 Wright 170; Helfrich v. Weaver, 11 P. F. Smith 384; Gibbons v. Fairlamb, 2 Casey 217, that a purchaser has a right to object to a title from the plaintiffs as not marketable, unless they shall procure from her a good and sufficient release of such estate or interest as she may be entitled to.

Judgment reversed, and now judgment for the plaintiffs, upon the case stated, upon their procuring and delivering to defendant a good and sufficient release by Elizabeth L. Ash, the widow of John Ash, of all such estate or interest as she may have in the premises.