## Ackerman, Appellant, *v.* Ackerman.

*Will—Construction—Remainder-man—Life estate—"Her and my heirs"—Husband and wife—Estate tail.*

Where a husband executes a deed for a nominal consideration of all his estate, real, personal and mixed, to his wife, naming her, "her and my heirs and assigns," and it appears that at the date of the deed he had living one child by his first wife and two by the wife named in the deed, the wife takes an estate for life, and upon his death an interest in remainder vests in the child of the first wife, and upon the death of the life tenant the children of such child, he having died intestate in the meantime, are entitled to a share in possession in the real estate covered by the deed.

Whilst the precise words, "heirs of the body," are not necessary to the creation of an estate tail, it is requisite that the heirs shall be limited to be procreated by, or begotten on, some body certain, either by express words or by words amounting to so much. It results that a conveyance to A, and the heirs of the grantor and the heirs of the grantee, even though the grantor and the grantee are husband and wife, neither by express words nor by express implication creates an estate tail, which by virtue of the act of 1855 becomes an estate in fee simple. And it is very clear that a granting clause in that form does not, ex vi termini, vest a fee simple in severalty in A. Further, applying the rule nemo est hæres viventis, it is beyond controversy that such a grant would not, eo instanti, vest an estate in fee simple in A and the living children of the grantor and of the grantee as tenants in common.

In this state, when the word "heirs" is used as a word of purchase, it means "statutory heirs"—those persons designated by the intestate act to take the estate not disposed of by last will and testament.

Argued March 14, 1907. Appeal, No. 17, March T., 1907, by plaintiff, from judgment of C. P. Dauphin Co., for defend-

ant on case stated in suit of John P. Ackerman et al. v. John M. Ackerman. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.    Reversed.

Case stated in ejectment for land in borough of Middletown. The opinion of the Superior Court states the case.

The court in an opinion by KUNKEL, P. J., entered judgment for defendant.

*Error assigned* was in entering judgment for defendant on the case stated.

*Levi B. Alricks*, for appellants.—The children of Ansel Ackerman, deceased, are not to be excluded from what their grandfather, Isaac Ackerman, considered their inheritance because of the deed of settlement: Baker v. Chalfant, 5 Wharton, 477; Luce v. Harris, 79 Pa. 432; Hauer's Estate, 16 Pa. Superior Ct. 257; Lehman v. Lehman, 29 Pa. Superior Ct. 60; Malone v. Dobbins, 23 Pa. 296; Nightingale v. Quartley, 1 Durn. & East, 630; Morris v. Stephens, 46 Pa. 200.    The great rule of interpretation, with respect to deeds and contracts, is to put such a construction upon them as will effectuate the intention of the parties, if such intention be consistent with the principles of law: Huss v. Stephens, 51 Pa. 282; Bagshaw v. Spencer, 1 Ves. 142; Stoever v. Stoever, 9 S. & R. 434; Packer v. Noble, 103 Pa. 188; Wolford v. Morgenthal, 91 Pa. 30; Criswell v. Grumbling, 107 Pa. 408; Hague v. Hague, 161 Pa. 643.

*H. L. Nissley*, for appellee.—The grantor's mind was positively fixed upon the words " her and my heirs, " and it must be presumed that he knew their exact meaning and purposely used them as he did in this conveyance.    There is nothing in the grant to indicate that heirs meant children: Auman v. Auman, 21 Pa. 343; Seybert v. Hibbert, 5 Pa. Superior Ct. 537; Physick's App., 50 Pa. 128; Nice's App., 50 Pa. 143; Dobson v. Ball, 60 Pa. 492.    The plaintiffs herein are the children of a son of the grantor by a former wife, and are not the heirs of both grantor and the wife named in the grant, and are not the heirs of the life tenant: Jones v. Morgan, 1 Bro. C. C. 206; Tucker's App., 75 Pa. 354; Ashhurst's App., 77 Pa. 464.

OPINION BY RICE, P. J., October 7, 1907:

In consideration of $1.00 and his natural love and affection for her, Isaac Ackerman conveyed—to quote from the deed—" unto her, my said wife, Sarah Ackerman, her and my heirs and assigns, all my estate, real, personal and mixed, that is to say,"—here follows a description of divers lands, buildings and chattels—"and all of my effects whatsoever, . . . . to have and to hold the said estate hereby granted and assigned unto her, the said Sarah Ackerman, her and my heirs and assigns and to her only proper use and behoof for herself and her and my heirs and assigns." At the date of this deed and at the date of his death intestate about two years later, Isaac had three children—Ansel, a son by his deceased wife, and John M. and Mary C., a son and a daughter by his second wife Sarah. After the death of Isaac, Ansel died intestate, leaving to survive him a widow and three children, and at a later date Sarah conveyed the land in dispute by deed in fee simple to her son John M. After her death, the children of Ansel brought this action of ejectment against John M. and claim to recover one undivided third part of the land.

If the words, " her and my heirs," must be interpreted so as to exclude every person who at the death of Sarah was not an heir of both Isaac and Sarah, the plaintiffs have no case. But however strict be the rule of law as to the interpretation of the word heirs, there is no rule of law, which, without regard to the intention of the grantor, compels such construction of the words " her and my " as would exclude the heirs of the grantor by his first marriage. Nor can it be truthfully said that, irrespective of rules of law, the phrase itself is so plain and unambiguous as to preclude inquiry as to the meaning the parties intended to be taken from it. If analogous precedents be needed to support these preliminary statements, we may cite Luce v. Harris, 79 Pa. 432, and Lehman v. Lehman, 29 Pa. Superior Ct. 60; s. c. 215 Pa. 344. In the former case a devise of land to Jacob and his wife Eliza, to be "equally divided among their children at their death," was construed to include the children of Jacob by a former wife. In the latter case, the children of the insured by a former wife were held entitled to share in the proceeds of a policy of life insurance, which was issued after his second marriage, and by its

terms was payable to "his wife, in trust for herself and their children." In Roe, dem. Nightingale v. Quartley, 1 Term Rep. 630, a devise was by way of remainder to the right heirs of Walter Read and Mary his wife, forever, and the court observed: "It has been argued that this description of the right heirs of Walter and Mary must either mean the heirs of the survivor, or else it must mean to give an estate in moieties to the heirs of each; and if so, the plaintiff can only be entitled to a moiety. But we are of opinion that the heirs of Hester" (which heirs claimed as being the heirs of the marriage of Walter and Mary, in opposition to a half-sister of Hester, who was Walter's daughter by a second wife) "ought to take the whole." In support of this conclusion the court said: "In the first place we think it may plainly be collected from the will that such was the testator's intention, which ought in all places to govern, if not contrary to any rule of law." The court then specifically referred to the other provisions of the will which were considered to show the testator's intention; thus implying, seemingly, that the result might have been different, if those other provisions of the will had disclosed a different intention. We are unwilling to concede that the Pennsylvania decisions above cited are in irreconcilable conflict with the English decision properly understood; they certainly are in harmony with it in this, that in the construction of a will, or other instrument of the same nature, the actual intention is the primary thing to be considered. Sometimes a rule of law, like the rule in Shelley's Case, operates to defeat the intention, whether of a deed or a will; but we have high authority for saying, that "the intention of a deed is as much the governing rule of construction as in a will, except that the former still requires formal words of limitation to make an estate of inheritance in conveyances of real estate:" SHARSWOOD, C. J., in Phillips's Appeal, 93 Pa. 45. This is certainly the case so far as the construction of the words "her and my" is concerned; that is, it is as much a question of intention as if we were construing the same words in a will. We have here a deed whereby a man parts not only with his land, but with all of his property real, personal and mixed, for a nominal pecuniary consideration. The same reasoning, which, in the construction of a will or a policy of life insurance, would lead to

the conclusion that in the use of the words "her and my " he did not deliberately premeditate the exclusion of his living son by a former wife, or the issue of that son, if he or they should answer to the other part of the description at the time the estate granted the heirs was to vest in interest, leads irresistibly to the same conclusion in the construction of this deed. Having regard to all those considerations that may be regarded in ascertaining the actual intention of the grantor, we are inclined to the opinion that all persons that would have been included in the description " her heirs and my heirs," were intended to be included in the elliptical expression " her and my heirs." It may be objected to this construction that, in the event of the death of the children of their marriage before the death of Sarah, it might let in heirs of Sarah who would not be of the blood of Isaac. This was a possibility which the grantor may not have thought of, or, if he did think of it, which he regarded as too remote to require that he provide against it. The objection is worthy of consideration, but it is not nearly so weighty as the objection to the construction which would exclude altogether his son by his first marriage and the issue of that son. In view of the circumstances, a grant in favor of his heirs and her heirs was a natural one, indeed, more natural than one that would have disinherited one of his sons; and as the words are susceptible of that construction, we proceed to a consideration of the questions that would arise if he had chosen that form of expression.

Whilst the precise words, heirs " of the body," are not necessary to the creation of an estate tail, it is requisite that the heirs shall be limited to be procreated by, or begotten on, some body certain, either by express words or by words amounting to so much : Beresford's Case, 7 Rep. 41 ; 2 Preston on Estates, 484, 490 ; 2 Blackst. Com. 114; Lessee of Hall v. Vandegrift, 3 Binney, 374 ; McIntyre v. Ramsey, 23 Pa. 317 ; Jones v. Jones, 201 Pa. 548. It results that a conveyance to A, and the heirs of the grantor and the heirs of the grantee, even though the grantor and the grantee are husband and wife, neither by express words nor by necessary implication creates an estate tail, which by virtue of the act of 1855 becomes an estate in fee simple. And it is very clear that a granting clause in that form does not, ex vi termini, vest a fee simple in sev-

eralty in A.    Further, applying the rule nemo est haeres viventis, it is beyond controversy that such a grant would not, eo instanti, vest an estate in fee simple in A and the living children of the grantor and of the grantee as tenants in common.    See Coursey v. Davis, 46 Pa. 25 ; Crawford v. Forest Oil Co., 208 Pa. 5 ; also Hague v. Hague, 161 Pa. 643, wherein it is declared that the case of Shirlock v. Shirlock, 5 Pa. 367, " cannot now be regarded as authority."    These observations lead to the conclusion, in which we concur with the learned judge below, that the deed conveyed to Sarah an estate for life only, with remainder in fee to those who fall within the description, " her and my heirs ; " but, as has been seen, we differ from him, in that we interpret that clause as not excluding any heir of the grantor.

In this state, when the word " heirs " is used as a word of purchase, it means " statutory heirs "—those persons designated by the intestate act to take the estate not disposed of by last will and testament : Clark v. Scott, 67 Pa. 446.    We are of opinion that the word must be given that interpretation here ; but it was uncertain who would be the heirs of Isaac, and who would be the heirs of Sarah.    If Isaac had survived both Ansel and Sarah, it would seem that the children of Ansel would not be entitled to take, because at her death they would be neither heirs of Isaac nor heirs of Sarah. But this did not happen.    When Isaac died Ansel, his son by his first wife, and John M. and Mary, his children by his second wife, became his heirs.    They answered to the description, " my heirs."    But as it was not certain that no other children would be born to Sarah by a second marriage, the share or shares that the heirs of Isaac would take must await the termination of the particular estate ; at least, that view is most favorable to those who might claim as the heirs of Sarah alone, and for present purposes may be taken for granted.    If, therefore, Ansel had survived Sarah, the life tenant—no other children having been born to her by a second marriage—the persons who at the termination of the particular estate would have answered to the description, " my heirs," would have been Ansel, John M. and Mary.    In that event Ansel would have taken a third of the whole or of a moiety, depending upon considerations hereafter to be

noticed. But Ansel did not survive the life tenant, and, strictly speaking, the children of Ansel would not answer to the description, my heirs in being at the termination of the life estate. Hence, it becomes necessary to determine the time as of which it was intended that the persons within the description, " my heirs," should be ascertained. The law favors vested remainders and their vesting at the earliest possible moment. There being nothing in the context, or in the extrinsic circumstances that may be considered, to show a contrary intention, we conclude that at the death of Isaac the remainder to his heirs vested in interest at once, the time of enjoyment, however, being postponed until the termination of the life estate. They constituted a class of persons who, in any event, would take a moiety upon the termination of the life estate, and would take the whole, in the event which happened, namely, the death of Sarah, without other heirs than those who were also heirs of Isaac. In this view the title of Ansel became complete on the death of his father, and no subsequent change in the circumstances of the family of his father could altogether divest the right thus acquired; upon Ansel's death intestate his share passed to his children, and upon the death of Sarah, the life tenant, their right to the immediate enjoyment of the share or interest which Ansel would have taken, if he had survived her, became complete. The result of our investigation is to preserve that equality among the children of the donor which there is reason to believe was intended by him; and this is a weighty consideration in the construction of a will or of a deed of this kind.

The judgment is reversed, and judgment is now entered in favor of the plaintiffs for an undivided third part of the land described in the case stated.